[In Bank. — March 23, 1883.]

TIERY WRIGHT, APPELLANT, *v.* B. H. ROSEBERRY
ET AL., RESPONDENTS.

EJECTMENT — SWAMP AND OVERFLOWED LANDS — CERTIFICATION BY COMMISSIONER OF GENERAL LAND OFFICE. — The title to swamp and overflowed lands never vests in the State until the commissioner of the general land office certifies them over to the State as swamp and overflowed; and ejectment by one claiming title to such lands acquired from the State cannot be maintained against persons in possession under United States patents, without showing such certification.

APPEAL from a judgment of the Superior Court of Yolo County, and from an order refusing a new trial.

The action was ejectment. The remaining facts are stated in the opinion of the court.

*W. B. Treadwell,* and *C. P. Sprague,* for Appellants.

*Belcher & Belcher,* and *J. C. Ball,* for Respondents.

SHARPSTEIN, J.— The defendants are in possession of the demanded premises, and hold United States patents for the same. But it is claimed on behalf of the plaintiff that before defendants acquired any right or title to said land the title to it had passed out of the United States, and become vested in the State of California. The grounds of this claim as stated by one of appellant's counsel are as follows: "That on July 1, 1862, he (plaintiff) acquired the title of the State to the land in controversy; that the State had, prior to July 23, 1866, selected this land as swamp land, and had disposed of the same to purchasers in good faith under her laws; that due notice had been given to the United States land department of this selection; that within the time required by the Act of Congress of March 12, 1860, and before 1866, the State had segregated these lands as swamp; and that, under due and regular proceedings had under the fourth section of the Act of 1866, this segregation was approved by the United States land department, and the tracts here claimed designated swamp on the United States plat of the township."

The clause, of the fourth section of the Act of 1866, to which reference is made reads as follows:—

" That in all cases where township surveys have been made or shall hereafter be made under authority of the United States, and the plats thereof approved, it shall be the duty of the commissioner of the general land office to certify over to the State of California as swamp and overflowed all the lands represented as such, upon such approved plats, within one year from the passage of this act, or within one year from the return and approval of such township plats.

" The commissioner shall direct the United States surveyor-general for the State of California to examine the segregation maps and surveys of the swamp and overflowed lands made by said State; and where he shall find them to conform to the system of surveys adopted by the United States, he shall' construct and approve township plats accordingly, and forward to the general land office for approval."

It is not claimed that "the commissioner of the general land office has ever *certified* over to the State of California as swamp and overflowed," any of the land in controversy. If he had it would be equivalent to a patent, and an action of ejectment might be maintained upon it against any one in possession under a subsequently acquired title. As it is the defendants are in possession, claiming title under United States patents, which purport to convey the entire premises. And the question is, can the plaintiff maintain this action upon the title which he has acquired from the State without showing that the land has been certified over to the State as swamp and overflowed? Counsel for appellant insist that although said land has never been certified over to the State according to the requirement of said act of Congress, the title to said land, nevertheless, became vested in the State. If that be so, the clause which requires the commissioner to certify over to the State as swamp and overflowed all the lands represented as such upon such approved plats, within one year from the passage of said act, or within one year from the return and approval of such township plats, is superfluous. The Act of September 28, 1850, contains a clause somewhat similar to this, and the construction which was given to it by the Supreme Court of the United States in *French* v. *Fyan*, 93 U. S. 169, seems to us to militate against the position which appellant's counsel seek to maintain in this case. That act made it the duty of the secretary of the interior, as soon as practicable after its passage, to make out an accurate list and plats of the land described in said act, and to transmit the same to the governor of the State, and at his request to cause a patent to issue to it, and that thereupon the fee simple to said lands should vest in the State. In *French* v. *Fyan, supra,* the court held that the issuance of a patent to the State concluded the question of the character of the land, and that parol evidence to prove that it was not swamp and overflowed was, in an action at law, inadmissible. That the law devolved upon the secretary "the duty, and conferred on him the power of determining what lands were of the description granted by that act, and made his office the tribunal whose decision on that subject was controlling."

In *Johnson* v. *Towsley*, 13 Wall. 72, the same court said, "that when the law has confided to a special tribunal the

authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal within the scope of its authority is conclusive upon all others."

Section 4 of the Act of July 23, 1866, makes it the duty of the commissioner in certain specified cases to certify lands over to the State. And it seems to be left to him to decide in each case whether or not it is a proper one for the exercise of that power. The most that can be claimed on behalf of appellant is that the commissioner has not performed his duty in this case. The law makes it the duty of the commissioner to certify over such lands within a specified period, but does not provide that in the event of his failing to do so the title to such lands shall vest in the State. And we are unable to find anything in said section four which impresses us as indicating that such was the intention of Congress.

But it is claimed on behalf of appellant that said section four must be read in connection with section one of the same act, which confirms to the State lands selected by her in part satisfaction of any grant, and under her laws disposed of to purchasers in good faith.

In *Sutton* v. *Fassett*, 51 Cal. 12, the court said: "The first section of that act does not relate to lands which had been segregated by the State as swamp and overflowed lands. The only section which purports to grant to the State — or in other words to confirm such segregation — is the fourth section." And that appears to us to be a reasonable construction of the language of said first section. It only applies to selections made of any portion of the public domain "in part satisfaction of any grant made to said State by any act of Congress." This would seem to have reference to grants of specific quantities, and not to a grant of an indefinite quantity. There would be no propriety in saying that the State accepted any number of acres of swamp land in part satisfaction of the grant of all the swamp land in the State. But in the cases of grants for school and improvement purposes where the quantities are limited and defined, deductions could be made, and it is expressly provided in said first section "that the State of California shall not receive under this act a greater quantity of land *for school or improvement purposes* than she is entitled to by law."

We therefore conclude that the title to the demanded premises has never vested in the State, and that the State could not convey a title to the appellant upon which he could maintain an action of ejectment against persons in possession of said premises under patents from the United States.

On the former appeal a remittitur issued out of this court containing the following order and directions:—

"It appearing that the court below has failed to find upon material issues made by the pleadings, to wit: Whether or not the plaintiff is the owner, or entitled to the possession of the north half of the northeast quarter of section thirty-six, the southeast quarter of section twenty-five, and the east half of the southeast quarter of section twenty-four of the lands in suit.

"Whereupon it is now considered, ordered, adjudged, and decreed by the court here that the judgment of the District Court of the sixth judicial district, in and for the county of Yolo, in the above-entitled cause be, and the same is hereby reversed, and the cause remanded with directions to the court below to find upon the foregoing issues, from the evidence already taken, and such further evidence as may be adduced by the respective parties, and thereupon to render judgment upon the whole case. The respective appellants in said actions severally to recover costs on the appeal."

The court did find "that at the time of the commencement of this suit the plaintiff was the owner, and entitled to the possession of the south half of the northeast quarter of section thirty-six, in suit, which was unlawfully withheld from him by defendant Roseberry; and of the east half of the northeast quarter of section twenty-five (containing eighty acres), which was withheld by defendant Simmons; and of the northwest quarter of the southeast quarter of section twenty-four, which was withheld from him by defendant Powell; and that plaintiff is damaged by defendant Roseberry in the sum of $150, by defendant Simmons in the sum of $150, and by defendant Powell in the sum of $75."

In addition to the lands described in this finding the plaintiff in his complaint alleged that he was the owner of the lands described in the remittitur. On the last trial the court set aside its former findings, and found that the plaintiff was not and

never had been the owner, or entitled to the possession of all or any part of the lands described in the complaint, and entered judgment in favor of the defendants.   In doing so appellant's counsel insist that the court did not follow the directions of this court, which were in effect that the court below should find, in addition to what it had already found, whether the plaintiff was the owner, or entitled to the possession of the lands described in said remittitur.   This might be so, if this court had not reversed the judgment of the court below, and directed it to render a judgment upon the whole case.   We think that the order and directions of this court, taken as a whole, amount to a reversal of the former judgment, and an order for a new trial.

There were some exceptions taken to the rulings of the court during the trial, but we are unable to discover any error for which the judgment and order appealed from should be reversed.

Judgment and order affirmed.

THORNTON, J., McKINSTRY, J., ROSS, J., McKEE, J., and MYRICK, J., concurred.